DA 12-0629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 354

TROY A. PILGERAM and TERESA A. PILGERAM,
husband and wife,

      Plaintiffs and Appellants,

  v.

GREENPOINT MORTGAGE FUNDING, INC.,
a California corporation; COUNTRYWIDE
HOME LOANS, INC., a Texas corporation;
MANN MORTGAGE, LLC, a Montana limited
liability company; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., an Iowa Corporation,

      Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DV 09-948A Honorable Ted O. Lympus, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Eric Hummel, Attorney at Law, PLLC; Kalispell, Montana

          W. Jeff Barnes (argued), W.J. Barnes, P.A.; Boca Raton, Florida

      For Appellee:

          Charles K. Smith, Poore, Roth & Robinson, P.C.; Butte, Montana

          Robert J. Pratte (argued), Brent R. Lindahl, Fulbright & Jaworski, L.L.P.; Minneapolis, Minnesota

          Argued and Submitted: September 25, 2013
                    Decided: November 25, 2013

Filed:

                 _____
                          Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Troy A. Pilgeram and Teresa A. Pilgeram (the Pilgerams) appeal from the orders of the Eleventh Judicial District Court, Flathead County, granting GreenPoint Mortgage Funding, Inc., Countrywide Home Loans, Inc., and Mortgage Electronic Registration Systems, Inc.'s (the Lenders') motion for summary judgment and denying the Pilgerams' motion to amend judgment.  We reverse.

¶2     The dispositive issue on appeal is:

*Did the District Court err in granting the Lenders' motion for summary judgment?*

### BACKGROUND

¶3     On September 7, 2006, the Pilgerams obtained a fixed rate home loan from Mann Mortgage (Mann) for $512,000 and executed a deed of trust (DOT) naming Citizen's Title & Escrow trustee and Mann lender.  Also on September 7, 2006, the Pilgerams signed a promissory note, which Mann endorsed to GreenPoint Mortgage Funding, Inc., (GreenPoint) on the same day.

¶4     The DOT provided that the promissory note could be sold without advance notice to the borrower.  The DOT also provided that the loan services entity could be changed with written notice to the borrower.  Pursuant to the promissory note, the Pilgerams waived their rights of presentment and notice of dishonor.  Mortgage Electronic Registration Systems, Inc., (MERS) was not named in the promissory note but was identified in the DOT as "[t]he beneficiary of this Security Instrument . . . solely as a nominee for Lender and Lender's successors and assigns."

2

¶5     After several transfers of the interest in the DOT and promissory note, the Pilgerams defaulted on the note in April 2008. On July 29, 2008, MERS assigned its interest in the DOT to GreenPoint, which subsequently held the interests in both the promissory note and the DOT. Also on July 29, 2008, GreenPoint appointed and substituted Charles J. Peterson (Peterson) as the successor trustee. In November 2008, the Pilgerams received notice that GreenPoint was assigning the servicing rights to Countrywide effective December 1, 2008. In early December, the Pilgerams received notice from Countrywide that it was now the loan servicing entity and that future payments were to be made in the manner indicated in the notice. They also received notice that the loan was in default and had been accelerated and/or was in foreclosure. They were informed of the manner in which they could bring the note current.

¶6     Following a series of cancelled foreclosure sales, the Pilgerams filed a complaint in the District Court, alleging the Lenders lacked the authority to foreclose. The Lenders moved for summary judgment,[1] and the District Court granted the motion on December 13, 2011, reasoning that MERS qualified as a "beneficiary" under Montana's Small Tract Financing Act (STFA). On January 25, 2012, the Pilgerams filed a motion to amend judgment. The District Court denied this motion on April 20, 2012, because "the time for ruling expired 60 days after the motion was filed." The Pilgerams subsequently filed an appeal in this Court in October 2012.

¶7     On appeal, the Pilgerams argue that the Lenders failed to meet their burden for summary judgment, and that the complicated assignments between and among MERS,

---

[1] Mann was not a party to the motion for summary judgment.

3

GreenPoint, and Countrywide create genuine issues of material fact. The Lenders counter that the Pilgerams "fail to explain *what* facts are supposedly in dispute, and why they are material" (emphasis in original). The Lenders argue that the District Court correctly concluded there was "no impediment prohibiting Countrywide from foreclosing the loan and from instructing" Peterson, the successor trustee, "to sell the property to satisfy the default."

¶8 The Pilgerams further argue MERS "is not, was not, and could never be the 'beneficiary' of the DOT." Thus, it "had no authority to endorse a note which it never owned" or "to assign the Pilgerams' deed of trust." According to the Lenders, the DOT specifically provided that MERS was a beneficiary, allowing MERS to act as the agent of the lender and of the lender's successors and assigns.

## STANDARD OF REVIEW

¶9 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 208, ¶ 11, 371 Mont. 147, 305 P.3d 861. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Brookins v. Mote*, 2012 MT 283, ¶ 22, 367 Mont. 193, 292 P.3d 347 (internal citation omitted).

## DISCUSSION

¶10 *Did the District Court err in granting the Lenders' motion for summary judgment?*

¶11 The District Court granted summary judgment in favor of MERS solely on the grounds that MERS qualified as a beneficiary under the STFA. Although never addressed

4

by the District Court, MERS asserts on appeal that they are special agent of the lender. We find that neither theory warrants summary judgment in favor of MERS.

¶12 Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law." *Feller v. First Interstate Bancsystem, Inc.*, 2013 MT 90, ¶ 16, 369 Mont. 444, 299 P.3d 338 (citing M. R. Civ. P. 56(c)(3)). We construe all facts in favor of the non-movant in determining whether an issue of material fact exists. *LaTray v. City of Havre*, 2000 MT 119, ¶ 15, 299 Mont. 449, 999 P.2d 1010. If the movant demonstrates the absence of any material issue of fact and entitlement to judgment, the non-movant must establish with substantial evidence that a genuine issue of material fact does exist or that the movant is not entitled to prevail under the law. *Semenza v. Kniss*, 2008 MT 238, ¶ 18, 344 Mont. 427, 189 P.3d 1188; *Prindel v. Ravalli County*, 2006 MT 62, ¶ 19, 331 Mont. 338, 133 P.3d 165. Where the undisputed evidence concerning the relationship of parties is reasonably susceptible to but a single inference, the question of their legal relationship is one purely of law. *Elkins v. Husky Oil Co.*, 153 Mont. 159, 166, 455 P.2d 329, 332 (1969); *Estates of Milliron v. Francke*, 243 Mont. 200, 204, 793 P.2d 824, 827 (1990); *Semenza*, ¶ 19.

*MERS is not a beneficiary under Montana's STFA.*

¶13 The Pilgerams argue that MERS had no authority to assign the Pilgerams' DOT and request that we follow other jurisdictions that have determined MERS did not qualify as a beneficiary under their trust deed acts. The Lenders argue the Pilgerams ignore the express language of the trust deed and the plain language of the definition of beneficiary under § 71-

5

1-303(1), MCA. They further argue the Pilgerams disregard Montana authority holding MERS may serve as a beneficiary and have instead "cherry-picked" out-of-state authority.

¶14 This case raises an issue we have not yet addressed, namely whether Montana's STFA permits MERS to be the designated beneficiary in a trust indenture.[2] We are mindful this is an area of law that is still developing, with state and federal courts in different jurisdictions reaching different results. Federal court decisions in the District of Montana on these issues are instructive, as are the decisions of state district courts and state courts in other jurisdictions. We note that the District Court in this case was not the only Montana state district court to consider similar trust language and conclude that MERS qualified as a beneficiary. *See Waide v. U.S. Bank Natl. Assn.*, DV-10-1763, slip op. at 10 (Watters, J., Yellowstone County Dist. Ct., June 28, 2011) (*Court Doc. 8-5 at 1-17*).

¶15 The STFA defines "beneficiary" as "the person named or otherwise designated in a trust indenture as the person for whose benefit a trust indenture is given or the person's successor in interest, who may not be the trustee." Section 71-1-303(1), MCA. "When interpreting a statute, we seek to implement the intention of the Legislature." *Williamson v. Mont. Pub. Serv. Commn.*, 2012 MT 32, ¶ 36, 364 Mont. 128, 272 P.3d 71 (citing § 1-2-102,

---

[2] "MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the 'lender.' The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan. Many of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—are members of MERS and pay a fee to use the tracking system." *Joseph v. Bank of America, N.A.*, 2012 U.S. Dist. LEXIS 97869, ** 10-11 (D. Mont., April 23, 2013) (citing *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009)).

6

MCA). We first look to the plain meaning of the statute's words. *Williamson*, ¶ 36. If the language is clear and unambiguous, we will not resort to other means of interpretation. *Williamson*, ¶ 36 (citing *Rocky Mt. Bank v. Stuart*, 280 Mont. 74, 80, 928 P.2d 243, 246-47 (1996)). If the language is unclear or ambiguous, however, we resort to rules of statutory construction to discern and give effect to the intention of the legislature. *Mont. Contractors Assn. v. Dept. of Hwys.*, 220 Mont. 392, 394, 715 P.2d 1056, 1058 (1986) (internal citations omitted).

¶16    We find that the definition of "beneficiary" is clear and unambiguous. The section lends itself to only one interpretation, namely that the beneficiary is "the person named . . . in a trust indenture as the person *for whose benefit* a trust indenture is given or the person's successor in interest" (emphasis added). Section 71-1-303, MCA. The Lenders argue that MERS received a "benefit" from the DOT even though MERS did not lend the money and has no right to repayment. The alleged benefit is title to the property in the event of foreclosure. However, the DOT was not *given* for the benefit of MERS but for the benefit of the lender. MERS may ultimately obtain some benefit based on its relationship with the Lenders but that benefit is not granted by the DOT. *See Edwards v. MERS*, 300 P.3d 43, 49 (Idaho 2013) ("The deed of trust was not given for the benefit of MERS or to secure an obligation owing to MERS. It was given for the benefit of Lehman Brothers to secure the obligation owing to it. Although MERS may obtain a benefit based upon its relationship with Lehman Brothers, the deed of trust was not granted in order to provide MERS with that benefit.").

¶17 The question of the statutory meaning of "beneficiary" does not depend on the parties' intent or application of common law principles of contract to the DOT. Rather, "beneficiary" must be interpreted in the context of legislative intent and whether the STFA authorizes nonjudicial foreclosure only when certain statutory conditions are met. The meaning of "beneficiary" is determined by statute and is thus incorporated into the parties' agreement and may not be otherwise altered. *See*, R. Lord, 11 Williston on Contracts § 30:24 (4th ed. 1999) ("[i]ncorporation of existing law may act to supersede inconsistent clauses purporting to define the terms of the agreement. For instance, where a statute regulates the amount the government is to pay for a particular service, the statute controls despite a contract between the government and the provider of the service agreeing to lay a lower rate."). References to "beneficiary" throughout the STFA make it clear that the beneficiary is the entity to whom the secured obligation flows. Section 71-1-305, MCA ("For the purpose of applying the mortgage laws, the grantor in a trust indenture is deemed the mortgagor and the beneficiary is deemed the mortgagee."); § 71-1-310, MCA (providing that a title insurer is liable to the beneficiary as stated); § 71-1-312(1), (3), MCA (referencing payments made to the beneficiary)). Here, the lender, not MERS, is the entity to whom the secured obligation flows.

¶18 Under the STFA, the beneficiary "may not be the trustee." Section 71-1-303(1), MCA. A "trustee" is "a person to whom the legal title to real property is conveyed by a trust indenture . . . ." Section 71-1-303(7), MCA. GreenPoint appointed Peterson as the trustee, and the Pilgerams acknowledge "[i]t is undisputed that MERS is not the trustee." However, the DOT identifies MERS as an entity holding legal title to real property and as the

8

"nominee." A nominee is "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Black's Law Dictionary* 1149 (Bryan A. Garner ed., 9th ed., West 2009). MERS holds only legal title to real property and receives no benefit or secured obligation from the DOT. Since § 71-1-303(1), MCA, prohibits holders of legal title from assuming the beneficiary role, we conclude that MERS does not meet the STFA's definition of "beneficiary." As the Pilgerams argue, "MERS was not the lender, did not extend any credit, and is nothing more than an electronic tracking entity."

> *MERS' agency relationship with lenders is not sufficiently established to warrant summary judgment.*

¶19    We next address the Lenders' argument that even if MERS is not a beneficiary, it may properly execute the documents in question because it is a special agent of the lender under § 28-10-102, MCA. That argument, raised by Appellants for the first time on appeal, is not sufficiently grounded in the record to satisfy the exacting standards of summary judgment.

¶20    It is well established that we do not consider new arguments or legal theories for the first time on appeal, even in the agency law context. *State v. Ferguson*, 2005 MT 343, ¶ 38, 330 Mont. 103, 126 P.3d 463; *State v. Peterson*, 2002 MT 65, ¶ 24, 309 Mont. 199, 44 P.3d 499; *Schlemmer v. N. Cent. Life Ins. Co.*, 2001 MT 256, ¶ 22, 307 Mont. 203, 37 P.3d 63; *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶¶ 15-17, 289 Mont. 255, 961 P.2d 100; *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶ 120, 325 Mont. 148, 104 P.3d 445 (Rice, J. & Gray, C.J., dissenting). In *Service Funding v. Craft*, 234 Mont. 431, 434, 763 P.2d 1131, 1133 (1988), appellants asserted the existence of a principle-agent relationship for the first

9

time on appeal. This Court refused to "apply the law of agency in addition to that which was presented to the District Court." *Service Funding*, 234 Mont. at 434, 763 P.2d at 1133. We further held that we are "unwilling to determine the existence of an agency relationship for the first time on appeal." *Service Funding*, 234 Mont. at 434, 763 P.2d at 1133.

¶21 This restraint is "rooted in fundamental fairness to the parties . . . ." *Gary & Leo's Fresh Foods, Inc. v. State*, 2012 MT 219, ¶ 16, 366 Mont. 313, 286 P.3d 1218*; See also*, *Brookins*, ¶ 24; *Day v. Payne*, 280 Mont. 273, 276-77, 929 P.2d 864, 866 (1996); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1144 (5th Cir. 1981). It is fundamentally unfair for a party to withhold an argument at trial, take a chance on a favorable outcome, and then assert a separate legal theory when the trial strategy fails. *Day*, 280 Mont. at 276-77, 929 P.2d at 866. New issues should only be reviewed on appeal if extenuating circumstances justify the party's failure to assert their legal theory at trial, such as the emergence of new precedent on the issue. *Marcus Daly Memorial Hosp. Corp. v. Borkoski*, 191 Mont. 366, 369, 624 P.2d 997, 999 (1981); *State v. Carter*, 2005 MT 87, ¶ 13, 326 Mont. 427, 114 P.3d 1001.

¶22 Appellees make no mention of an agency theory in any of their answers to the complaint or in their motions for summary judgment and the District Court made no finding of fact or conclusion of law concerning an agent-principal relationship. MERS submitted no evidence to support the agency relationship, nor have the Pilgerams been afforded an opportunity to refute that relationship with evidence of their own. Put simply, the record has not been developed to determine whether agency existed. This fact is especially troubling on summary judgment because a finding of agency requires consideration of all facts and

10

circumstances between the parties, not merely the plain language of the document in question. *Dick Anderson Constr., Inc., v. Monroe Prop. Co.*, 2011 MT 138, ¶ 22, 361 Mont. 30, 255 P.3d 1257. We cannot fault the Pilgerams for mishandling the agency argument in their reply brief and failing to raise sufficient evidence to defeat summary judgment on the agency issue. Instead, we find that these omissions demonstrate the patent unfairness that results when a party is ambushed with a new legal argument on appeal. We refuse to punish the Pilgerams for failing to raise a material fact concerning an issue that never existed in this litigation.

¶23     Nor do extenuating circumstances or new developments in the law justify MERS' complacency in asserting an agency theory at the trial level. In March 2009, the Supreme Court of Arkansas determined that MERS was the "mere agent" of a lender. *Mortgage Elec. Registration Sys. v. Southwest Homes of Ark.*, 301 S.W.3d 1, 3 (Ark. 2009). The Supreme Court of Kansas considered MERS' agency relationship with lenders in August 2009. *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166 (Kan. 2009). Prior to either of those decisions, MERS' agent status was evaluated by the bankruptcy courts of California and Idaho. *In re Vargas*, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008); *In re Sheridan*, 2009 Bankr. LEXIS 552, 14 (Bankr. D. Idaho 2009). After all of this litigation concerning MERS' agent status, MERS' motion for summary judgment in July 2010, makes no mention of an agency theory. MERS remained silent about this legal theory at the summary judgment hearing and, correctly predicting that the Court would disagree with the District Court's reasoning, now asserts a new legal theory where its first one failed. This surprise appeal unfairly prejudices the Pilgerams' position and is prohibited by precedent.

¶24 We are especially wary of new arguments in the context of summary judgment. We construe all facts in favor of the non-movant in determining whether an issue of material fact exists. *LaTray*, ¶ 15. If the movant demonstrates the absence of any material issue of fact and entitlement to judgment, the non-movant must establish with substantial evidence that a genuine issue of material fact does exist or that the movant is not entitled to prevail under the law. *Semenza*, ¶ 18; *Prindel*, ¶ 19. Because the issue was never raised at the trial level, the movant never demonstrated an absence of fact and entitlement to judgment on this issue, nor did the non-movant have a chance to present substantial evidence refuting that absence or entitlement.

¶25 With a more complete record, other courts have refused to recognize MERS' agent status on summary judgment. A New York Bankruptcy Court refused to grant MERS agent status because its membership agreement with lenders contained no grant of authority to MERS. *In re Agard*, 444 B.R. 231, 252 (Bankr. E.D.N.Y. 2011). That membership agreement is notably absent from this record, even though a principal-agent relationship requires consideration of all facts and circumstances between the parties. *Dick Anderson Constr., Inc.*, ¶ 22. The membership agreement could be dispositive in this case as actual authority requires the principal's manifestation of assent to the agent's action. *Restatement (Third) of Agency* § 3.01; § 28-10-201, MCA. The Supreme Court of Oregon also found that MERS had not sufficiently established its agency theory because no evidence showed "who ultimately holds the relevant interest in the notes and trust deeds, and whether that person and each of its predecessors in interest conferred authority on MERS to act on their behalves in the necessary respects." *Brandrup v. Recontrust, Co.*, 303 P.3d 301, 323 (Or. 2013). That

12

evidence is missing here as well; the DOT only states that "Borrower understands and agrees" that MERS' was a nominee of the lenders, not that the lenders themselves granted MERS authority.

¶26 But even if we decided the agency issue using only the language of the DOT, that evidence is reasonably susceptible to more than one inference, therefore, the legal relationship between MERS and the Lenders is not purely a question of law. *Elkins*, 153 Mont. at 166, 455 P.2d at 332; *Estates of Milliron*, 243 Mont. at 204, 793 P.2d at 827. MERS relies on the Supreme Court of Idaho's conclusion that since MERS was identified as the nominee in the DOT, and one definition of nominee is "agent," then MERS was indisputably an agent as a matter of fact and law. But "nominee" is subject to more than one interpretation based on the context of its use. *Landmark Nat'l Bank,* 216 P.3d at 166. While "nominee" *may* mean "agent," another definition is the one discussed above; "a party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Black's Law Dictionary* at 1149. This definition does not necessitate an agent-principal relationship as a matter of law. MERS appears to fit this definition, as the DOT itself states that "MERS holds *only legal title* to the interest granted by Borrower" (emphasis added) and MERS presumably holds this title for the benefit of the mortgagee/lender. Further, the Supreme Court of Oregon found that the deed of trust only obfuscated MERS' agent status by first granting the narrow designation of "nominee" holding "only legal title" but then also granting the right to "exercise any or all" interests of the lender "as necessary." *Brandrup*, 303 P.3d at 323. MERS relies on the same vague and confusing claim of authority as dispositive for the agency issue in this case. Especially when

13

construed in the Pilgerams' favor, the facts of this case are susceptible to a determination that MERS was the kind of nominee that is not an agent.

¶27 We refuse to grant a motion for summary judgment based on an issue never raised below and against a party that never had an opportunity to rebut the facts and law of the issue. We reverse and remand this case to the District Court for further findings of fact regarding MERS' principal-agent relationship with the lenders.

/S/ MICHAEL E WHEAT

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS
Justice Patricia Cotter, dissenting.

¶28 I concur in the Court's Opinion through ¶ 18. I dissent from the remainder of the Court's Opinion with respect to the role of MERS as an agent of the lender, and would affirm the decision of the District Court.

¶29 I would conclude that even though MERS does not qualify as a beneficiary, it may properly execute the documents in question because it is a special agent of the lender. Section 28-10-102, MCA, provides: "An agent for a particular act or transaction is called a special agent. All others are general agents."

¶30 The Pilgerams' DOT provided that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." The DOT described the nominee's authority as follows: "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests [granted by the borrower in the Deed of Trust], including, but not limited

14

to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument." As noted, § 28-10-102, MCA, specifically contemplates that one may act as an agent for a particular act or transaction. This is precisely the role that MERS fills under the DOT.

¶31 A nominee is "[a] person designated to act in place of another, usu. in a very limited way." *Black's Law Dictionary* at 1149. An agent is one who represents another. Section 28-10-101, MCA. A nominee is a form of agent. *See Edwards*, 300 P.3d at 49 ("As the definitions indicate, a nominee is merely a form of agent.").

¶32 Given the language of the DOT naming MERS a nominee and listing the actions it is authorized to take, I would conclude that MERS was the lender's agent. Several other courts have reached the same conclusion. *See Joseph*, 2012 U.S. Dist. LEXIS 97869 at * 33 ("MERS was Countrywide's agent, cloaked with authority to act on the lender's behalf under the Deed of Trust."); *Heffner v. Bank of Am.*, 2012 U.S. Dist. LEXIS 64668, * 12 (D. Mont., May 8, 2012); ("As in *Joseph*, the Deed of Trust here reflects that America designated MERS as its agent and gave it full authority to act as a nominee for America and its successors and assigns."); *Edwards*, 300 P.3d at 49 ("The lender, Lehman Brothers, had the authority to designate an agent to act in its behalf, and the actions of its agent, MERS, were the actions of Lehman Brothers."). MERS could, as the lender's agent, assign the beneficial interest in the deed of trust to GreenPoint, who could in turn appoint a successor trustee. *See Joseph*, 2012 U.S. Dist. LEXIS 97869 at * 36 ("The Court thus concludes that MERS could and did, as Countrywide's nominee/agent, assign the beneficial interest in the deed of trust to BOA-HLS."); *Heffner*, 2012 U.S. Dist. LEXIS 64668 at * 12 (The STFA does not permit

15

MERS to be the beneficiary in a trust indenture as the lender's nominee, but MERS could assign the beneficial interest in the deed of trust.); *Restatement (Third) of Agency § 1.04(2)* (an agent may act on behalf of both a disclosed principal, i.e., the original lender, and a later unidentified principal, i.e., original lender's successor and assign). This conclusion is consistent with Montana law allowing an indenture trustee, performing duties under the STFA, to delegate those duties to another party. *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 2007 MT 301, ¶¶ 12, 15, 340 Mont. 62, 172 P.3d 116; *See also Diehl v. Reconstruct Co., N.A.*, 2010 U.S. Dist. LEXIS 52404, ** 11, 13 (D. Mont., April 22, 2010) (adopted by *Diehl v. Reconstruct Co., N.A.*, 2010 U.S. Dist. LEXIS 52403 (D. Mont., May 27, 2010)) (Section 71-1-315(3), MCA, did not prohibit First American and Reconstruct from designating an agent to conduct the foreclosure sales of the plaintiffs' real properties, even if the agent did not separately qualify as a trustee under § 71-1-306, MCA; the agent could perform any act First American and Reconstruct could perform.); *Joseph*, 2012 U.S. Dist. LEXIS 97869 at * 35 ("No 'contrary intention clearly appears' in the STFA that would preclude the lender from designating an agent to act on the lender's behalf to exercise all pertinent authority of a beneficiary under the trust indenture.").

¶33 The Court opines that the question of whether MERS was the agent of the lender was raised for the first time on appeal and therefore should not be considered. Notably, neither Pilgerams nor the other parties raised this concern; rather, the Court has done so sua sponte. In fact, the parties debated the agency question in their appellate briefs and also extensively addressed agency during oral argument before this Court without ever asserting the issue was not properly before us. As the issue was thoroughly argued with the consent of the parties,

16

the concerns about unfairness repeatedly voiced by the Court are unfounded. As we have frequently stated, this Court generally does not resolve a case on grounds not raised or supported by the parties. *Citizens for Balanced Use v. Maurier*, 2013 MT 166, ¶ 15, 370 Mont. 410, 303 P.3d 794 (citing *State v. Andersen-Conway*, 2007 MT 281, ¶ 14, 339 Mont. 439, 171 P.3d 678); *Pinnow v. Mont. State Fund*, 2007 MT 332, ¶ 15, 340 Mont. 217, 172 P.3d 1273. It bears noting that while there is no counterpart in the Montana Rules of Appellate Procedure, M. R. Civ. P. 15(b)(2) provides that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." The same rationale should apply to arguments presented by agreement on appeal.

¶34     The Court also concludes that resolution of the agency issue requires a more complete record and "further findings of fact regarding MERS' principal-agent relationship with the lenders." Opinion, ¶ 27. With due respect, I believe the Court exaggerates the complexity of the agency issue. The question of whether MERS may properly be deemed the agent of the lender is driven by the language of the DOT and the law of agency. The question is one of law, not fact, and therefore remand for further findings of fact is wholly unnecessary. The DOT language is not complicated or ambiguous, and the law of agency as well as the precedent cited herein clearly supports a determination that an agency relationship between MERS and the lender exists under these circumstances. I would therefore affirm the decision of the District Court. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

17

Justice Beth Baker joins in the dissenting Opinion of Justice Cotter.

/S/ BETH BAKER

Justice Jim Rice, dissenting.

¶35    I believe the definition of "beneficiary" under the STFA is broader and more flexible than the Court concludes.  That provision, § 71-1-303(1), MCA, states:

> "Beneficiary" means the person named or otherwise designated in a trust indenture as the person for whose benefit a trust indenture is given or the person's successor in interest, who may not be the trustee.

¶36    The flexibility of this statute comes from the words that the Court does not emphasize:  the beneficiary is the person "*named or otherwise designated*" in the trust indenture "*as the person*" for whose benefit the indenture is given.  Except for its exclusion of the trustee, and any other restriction at law, this provision broadly permits any other person to be "named or designated" in the trust indenture "as the person" for whose benefit the trust indenture is given.  The statute says nothing about limiting the beneficiary to lenders, or requiring that the beneficiary be "the entity to whom the secured obligation flows."  Opinion, ¶ 17.  This provision is not about lenders; it is about *designating* someone "*as the person*" to hold a beneficial interest in the trust indenture.  The provision's purpose is to permit flexibility in financial arrangements consistent with the constitutional right of contract and assignment.  Here, the "person" so designated under this broad authority is MERS.

¶37    This definition of beneficiary, similar to the one in Oregon's statutes, does not evince a legislative intent to

18

preclude the parties to a trust deed from designating the agent of the lender and its successors as the beneficiary. We should be hesitant to find in that run-of-the-mill definition a limitation on the parties' customary authority to structure their transactions as they see fit, unless the text, context, or history of that definition requires it. . . . Certainly, nothing in the text of the definition expressly forecloses the parties from designating the lender's agent as the beneficiary in the trust deed.

*Brandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 324 (Or. 2013) (Kistler, J., Balmer, C.J., concurring in part and dissenting in part).

¶38    MERS was identified here as the lender's "nominee" under the DOT and, in the terms of the statute, could likewise have been identified as the "designee." The DOT states: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. *MERS is the beneficiary under this [DOT].*" (Emphasis added.) Under the section entitled "Transfer of Rights in the Property" it states: "[t]he beneficiary of this [DOT] is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." It goes on to provide that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this [DOT], but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this [DOT].*" (Emphasis added.) This language clearly demonstrates that at the time the trust indenture was entered into, the parties designated MERS as the beneficiary of the DOT and granted MERS the authority to act as the beneficiary.

¶39 As noted, the only limitation within the STFA definition of beneficiary is that the beneficiary "may not be the trustee." Section 71-1-303(1), MCA. The Court acknowledges that "[i]t is undisputed that MERS is not the trustee" but nonetheless holds that MERS is actually the trustee by equating a dictionary definition of "nominee" with a definition of "trustee" from the STFA. Opinion, ¶ 18. However, this analysis strays from the clear language of both the STFA and the DOT. Here, MERS is not a trustee for purposes of the DOT, nor does it claim to be. Rather, Citizens Title & Escrow Co. is specifically designated as trustee. Thus, the limitation in the STFA does not exclude MERS as beneficiary.[1]

¶40 When construing a statute,

> the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

Section 1-2-101, MCA. Since the definition of "beneficiary" under the STFA does not preclude designation of MERS as beneficiary, and the STFA, taken as a whole, does not preclude MERS from serving as a beneficiary if so designated, I would affirm the District Court's conclusion that the "undisputed facts reflected in the documents as well as Montana statutes, [sic] establish that MERS, as beneficiary, had the statutory authority to appoint a successor trustee and could do so without notice to Plaintiffs as borrowers." Given the broad

---

[1] Additionally, § 71-1-306, MCA, requires that a trustee be either an attorney licensed to practice law in Montana; a bank, trust company, or savings and loan association authorized to do business in Montana; or a title insurer or title insurance producer or agency authorized to do business in Montana. MERS is clearly not an attorney, a bank, a savings and loan association, or a title insurer. Under § 32-1-107, MCA, a "trust company" is defined as "any corporation that is incorporated under the laws of this state" for one or more of a list of designated purposes. MERS is incorporated under the laws of Delaware, not Montana; nor is it even registered as an active corporation in this state. Aside from this issue, MERS does not meet any of the listed purposes for which it must be formed to be a "trust company." Thus, MERS could not, even if it wanted to, be a trustee under the DOT.

language of the statute, I would not disregard the parties' beneficiary designation absent legislative intent to the contrary.

/S/ JIM RICE